UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 20-CV-04044 (FB) (RER)

---

Ryeco, LLC,

                          Plaintiff,

versus

Legend Produce Inc., Natalie H. Efraimov, And Solomon Muratov a.k.a. Shlomo Muratov

                          Defendants.

---

**REPORT & RECOMMENDATION**
May 24, 2021

---

**to the Honorable Frederic Block,
Senior United States District Judge**

**Ramon E. Reyes, Jr., U.S.M.J.:**

On August 31, 2020, Plaintiff Ryeco, LLC, ("Ryeco") filed this suit against Defendants Legend Produce Inc. ("Legend Produce"); Natalie H. Efraimov ("Efraimov"); and Solomon Muratov, also known as Shlomo Muratov ("Muratov") (collectively, "Defendants") claiming violations of the Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(4), and breach of contract under New York State law. (Dkt. No. 1 ("Compl.") ¶¶ 7, 39–44). Defendants failed to answer or otherwise respond, resulting in an entry of default on October 22, 2020. (Dkt. No. 9). Ryeco subsequently moved for default judgement. (Dkt. No. 10). Your Honor has referred this matter to me for a report and recommendation. (Order Dated 11/05/2020). For the reasons set forth herein, I respectfully recommend that Ryeco's motion for default judgment be granted, and that Defendants be held jointly and severally liable to Ryeco for $38,534.90 in damages, $400 in costs, $7,302 in attorneys' fees, plus pre-judgment interest as described herein.

## BACKGROUND

### A. Factual Background

Ryeco is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania. (Compl. ¶ 3). It is engaged in the business of buying and selling wholesale quantities of fresh fruits, vegetables and other produce in interstate commerce, and at all relevant times was subject to and licensed under PACA. (*Id*.;

1

Dkt. Nos. 12 ("Colace Decl.") ¶ 5, 12-1).[1] Legend Produce is a New York corporation with its principal place of business in Brooklyn, New York. (Compl. ¶ 4). Legend Produce bought large amounts of wholesale fresh fruits and vegetables but did not obtain a PACA license or a New York State Department of Agriculture and Markets license as a Farm Products Dealer. (*Id.*; Collace Decl. ¶¶ 6–8; Dkt. No. 13 ("Diess Decl.") ¶ 2; *see also* Dkt. No. 12-2). Efraimov and Muratov were and are officers, directors, members and/or equity holders of Legend Produce during the relevant time period and "controlled" its operations. (Compl. ¶¶ 6–7).

Between August 25, 2019 and September 27, 2019, Ryeco sold and delivered to Defendants large quantities of produce. (Compl. ¶ 8; *see also* Dkt. Nos. 12-2, 13-2). Legend Produce received all of Ryeco's invoices without objection. (Compl. ¶ 40). Ryeco alerted Defendants to their demands for payment through a letter sent on August 5, 2020. (Dkt. No. 13-2). Muratov also corresponded with Ryeco's counsel via email regarding the outstanding balance due. (Dkt. No. 13-3). Despite these repeated demands from Ryeco, however, Defendants have failed to pay for the goods they received. (Compl. ¶ 10).

### A. **Procedural Background**

Ryeco brought this action on August 31, 2020, alleging PACA violations, as well as state law claims for breach of contract and violations of the New York Civil Practice Law and Rules ("CPLR"). (Compl. ¶¶ 14–16, 17–21, 22–28, 29–35, 36–38, 39–44, 45–48).

Legend Produce was served with the Summons and Complaint on September 8, 2020, through the Office of the Secretary of State of New York. (Dkt. No. 5). A duplicate copy of the Summons and Complaint was mailed via the United State Postal Service to Legend Produce's business address at 2055 East 23rd Street, Brooklyn, New York on September 14, 2020. (Dkt. No. 5-1). Efraimov and Muratov were personally served with the Summons and Complaint on September 22, 2020 and September 4, 2020, respectively. (Dkt. Nos. 6–7). Duplicate copies were mailed via first class mail to their last known addresses. (*Id.*).

Notwithstanding proper service,[2] Defendants failed to appear, answer or otherwise respond to the Complaint. (*See* Dkt. Nos. 8–9). Ryeco requested a certificate of default. (Dkt. No. 8). The Clerk of the Court entered Defendants' default on October 22, 2020. (Dkt. No. 9). Ryeco then moved for a default judgement on November 5, 2020 (Dkt. Nos. 10–14). The motion was mailed to the last known business address of Legend Produce and the last known residences of Efraimov and Muratov. (Dkt. No. 15).

Ryeco moved for default judgment under PACA alone.[3] (*See* Dkt. No. 14 ("Pl.'s

---

[1] Filindo Colace ("Colace") serves as the Vice President of Operations for Ryeco. (Colace Decl. ¶ 1).

[2] Prior to filing, Ryeco's counsel communicated with Muratov via email. Although not required, it may be preferable to also attempt courtesy service through this method prior to seeking default judgement. *Cf. Khotovitskaya v. Shimunov,* No. 18-CV-7303 (NGG) (CLP), 2020 WL 4588345, at *5 (E.D.N.Y. Mar. 10, 2020) (holding that court had personal jurisdiction where defendants did not contest that service was properly effectuated and they received curtesy copies of summons and complaint via email), *R & R adopted by* 2020 WL 2110716 (May 4, 2020).

[3] Ryeco did not mention the breach of contract claim in its request for default judgment. (*See generally* Pl.'s Mem.; *see also* Compl. ¶¶ 39–44). Nevertheless, Ryeco argues that it is entitled to attorney's fees and interest under a breach of contract claim. (Pl.'s Mem. at 9–10). Because the default judgement request itself is based on the PACA claims alone, this report and

2

Mem.") at 2–8 (discussing liability under PACA alone)). Defendants failed to respond to or oppose the motion for default judgment.

## DISCUSSION

### I. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure provides for a two-step analysis for default judgment. *G & P Warehouse, Inc. v. Cho's Church Ave. Fruit Mkt.*, No. 15-CV-6174 (NG) (CLP), 2016 WL 5802747, at *3 (E.D.N.Y. Aug. 12, 2016) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993)), *R & R adopted by* 2016 WL 5716819 (Sept. 30, 2016). Under Rule 55(a), plaintiff must request an entry of default from the clerk of the court. FED. R. CIV. P. 55(a). The clerk is required to enter default if a party "has failed to plead or otherwise defend." *Id.* Following the entry of default, the moving party is required to submit a motion for default judgment. FED. R. CIV. P. 55(b).

When all procedural requirements are met, the court holds the defaulting party as admitting to all well-pleaded facts in the complaint. *Higueral*, 2019 WL 5694079, at *4 (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The court accepts as true all of the plaintiff's factual allegations, except for those relating to damages. *G & P*, 2016 WL 5802747, at *4 (citing *Greyhound*, 973 F.2d at 158). The Court is also required to "draw all reasonable inferences" in plaintiff's favor. *Higueral*, 2019 WL 5694079, at *4 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). The court then evaluates if the well-pleaded facts establish the defendant's liability. *See G & P*, 2016 WL 5802747, at *4 (citing *Finkel*, 577 F.3d at 84).

Damages are assessed separately and must reflect what was requested in the demand for judgment. *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841 (LDH) (RLM), 2018 WL 4327923, at *3 (E.D.N.Y. July 9, 2018) (quoting *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007)), *R & R adopted by* 2018 WL 4326925 (Sept. 10, 2018). They must "naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 158.

Here, the procedural requirements for awarding a default judgement were met, thus a review of Defendant's liability based on Ryeco's well-pleaded facts follows.

### II. PACA liability

"Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce." *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2d Cir. 2004) (citations omitted). As part of PACA's goal to protect produce sellers, Congress amended PACA in 1984 to include § 499e(c), thus creating "a self-help tool" that enables sellers and growers of produce "to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers" of produce. *D.M. Rothman & Co. v. Korea Com. Bank of N.Y.*, 411 F.3d 90, 93 (2d Cir. 2005) (quoting *Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions To Effect a Statutory Trust*, 49 Fed. Reg. 45735-01, *45737 (Nov. 20, 1984)). That "self-help tool" created in § 499e of PACA is a trust. *Id.*

Specifically, § 499e requires that produce purchasers, or "trustees," using credit are to hold assets, namely, produce, proceeds and owed payment "in trust for the benefit of all

---

recommendation does not address the breach of contract claims made in the complaint. *See Higueral Produce, Inc. v. CKF Produce Corp.,* No. 18-CV-6760 (NGG) (SJB), 2019 WL 5694079, at *2 (E.D.N.Y. Aug. 16, 2019), *R & R adopted in relevant part by* 2019 WL 5693798 (Sept. 30, 2019).

3

unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers." *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 486 (2d Cir. 2001) (quoting 7 U.S.C. § 499e(c)(2)). "[T]he trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full." *G & P*, 2016 WL 5802747, at *4 (quoting *Ger-Nis Int'l, LLC v. FJB, Inc.*, No. 07 Civ. 898 (RO), 2007 WL 656851, at *1 (S.D.N.Y. Mar. 1, 2007)).

> A PACA trustee's primary duty is to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA]. . . . PACA regulations define "dissipation as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."

*D.M. Rothman*, 411 F.3d at 93–94 (quoting 7 C.F.R. § 46.46(a)(2), (d)(1)).

To recover monies from a PACA trust, a plaintiff must show five elements:

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser of its intention to[ ] do so.

*A & J Produce Corp. v. Harvest Produce Corp.*, No. 16 Civ. 7239 (LTS), 2017 WL 3668995 at *3 (S.D.N.Y. Aug. 24, 2017) (quoting *Nico Mexi Food, Inc. v. Abarrotera Cent. #2 Wholesale, Corp.*, No. 14 Civ. 296 (KNF), 2016 WL 873466, at *3 (S.D.N.Y. Feb. 10, 2016)).

A. First Element: Legend Produce Purchased Perishable Agricultural Commodities

PACA requires that "[t]he commodities sold were perishable agricultural commodities." *A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005). A "perishable agricultural commodity" is "any of the following, whether or not frozen or packed in ice: [f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A).

Ryeco alleges that it sold fresh produce to Legend Produce between August 10, 2019 and September 27, 2019. (Pl.'s Mem. at 4; Compl. ¶ 3; *see* Dkt. No. 12-2). Ryeco provides partially unpaid invoices indicating that it sold and delivered to Legend Produce fruits and vegetables such as apples, oranges, peaches, and eggplants. (Dkt. Nos. 12-2, 13-2 at 4). There are no notations that the produce was canned or otherwise processed. (*See* Dkt. No. 12-2). Thus, Ryeco satisfied the first element. *See Cent. Produce*, 2018 WL 4327923, at *4 (relying on similar invoices).

4

B. Second Element: Legend Produce Was A Commission Merchant, Dealer, Or Broker

For PACA's trust provisions to apply, a plaintiff must show that "the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker." *Chang*, 385 F. Supp. 2d at 358. Ryeco alleges that Legend Produce is subject to PACA requirements as a dealer. (Pl.'s Mem. at 4). Although Legend Produce is not licensed under PACA, (*id.*), it may still be considered a dealer under the statute, *A & J Produce Corp. v. Foodways, Inc*., No. 88 Civ. 0754 (MBM), 1988 WL 120159, at *1 (S.D.N.Y. Nov. 2, 1988) ("[PACA] applies to any 'commission merchant, dealer or broker in all transactions,' not simply to the ones that have secured licenses.").[4]

The term "dealer" refers to "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6); *see also Chang*, 385 F. Supp. 2d at 359 (citations omitted). The buyer must be "engaged in the business of buying or selling, which contemplates more than a single purchase or sale transaction. Indeed, dealers must buy and sell agricultural commodities as part of their profit-making business." *Chang*, 385 F. Supp. 2d at 359 (quotations omitted). The Court is not required to find that Legend Produce was *primarily* engaged in the business of buying and selling produce, but only that doing so furthered their business objectives. *Royal Foods Co. v. RJR Holdings, Inc*., 252 F.3d 1102, 1107 (9th Cir. 2001); *see also Chang*, 385 F. Supp. 2d at 359 (citing *Royal Foods*). "Wholesale and jobbing quantities" is defined as the "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x); *In re Old Fashioned Enter., Inc.*, 236 F.3d 422, 424 (8th Cir. 2001); *see also Chang*, 385 F. Supp. 2d at 360 (citing *In re Old Fashioned*).

Ryeco alleged that Legend Produce is "engaged in the business of buying wholesale quantities of [produce] in interstate commerce." (Compl. ¶ 4). Ryeco supplied invoices showing that Legend Produce bought and received large amounts of produce that originated from outside the United States throughout August and September 2019. (*See* Dkt. Nos. 12-2, 12-3). Colace, Vice President of Operations for Ryeco, attests that "[a]ll the loads Defendants received from Ryeco contained far in excess of 2,000 pounds of produce." (Colace Decl. ¶ 8). Colace explains that, for example, each item marked "MELON WAT SDLS" (watermelons) averages around 700 pounds. (*Id.* ¶ 9). The invoices indicate that Ryeco delivered at least three such bins of watermelon on at least two occasions, along with several other varieties of fresh produce. (*See* Dkt. No. 12-2). This is well in excess of the statutory requirement. Ryeco also supplied an invoice specifically showing that on August 14, 2019, it delivered to Legend Produce fresh fruits and vegetables weighing 23,839 pounds. (Dkt. No. 12-3). Thus, the court can reasonably infer that Legend Produce was indeed in the business of buying produce in wholesale or jobbing quantities in interstate or foreign commerce. *See Mor USA, Inc. v. Adam Trading, Inc.*, No. 19-CV-07283 (AM) (DST), 2021 WL 799327, at * 4 (E.D.N.Y. Feb. 10, 2021) (finding defendant was a dealer based on shipment dates

---

[4] Failing to establish that Defendant is a dealer under PACA would also frustrate this Court's jurisdiction over this matter. *See Chang*, 385 F. Supp. 2d at 358–59.

5

showing produce purchases in excess of 2,000 pounds), *R & R adopted by* 2021 WL 796061 (Mar. 1, 2021).

However, the definition of "dealer" also includes three exceptions.[5] The only exception relevant in this action reads: "no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000." 7 U.S.C. § 499a(b)(6)(B). "In computing dollar volume, all purchases of fresh and frozen fruits and vegetables are to be counted, without regard to quantity involved in a transaction or whether the transaction was intrastate, interstate or foreign commerce." *In re Magic Restaurants, Inc.*, 205 F.3d 108, 112 (3d Cir. 2000) (quoting 7 C.F.R. § 46.2(m)) (relied on for PACA analysis in *A&B Alternative Mktg. Inc. v. Int'l Quality Fruit Inc.*, No. 20-CV-3022 (BMC), 2021 WL 681139, at *3 (E.D.N.Y. Feb. 22, 2021)).

The Court notes that the produce was delivered to Defendants' facility at the Brooklyn Terminal Market. (Colace Decl. ¶ 10). Although Ryeco does not mention the retail exception in their brief, Ryeco alleges that Legend Produce was at all times relevant to this claim subject to licensure under provisions of PACA as a dealer. (Compl. ¶ 4). Ryeco further alleges that Defendants were made aware of the claims against them, chiefly about them being subject to PACA, and that they failed to dispute these allegations, (Mem. at 5),[6] nor did Legend Produce appear before this Court to contest the allegations.

Ryeco's documentary evidence supports the reasonable inference that Legend Produce purchased produce invoiced in excess of $230,000 throughout the year.[7] Due to Legend Produce's default, Ryeco has been unable to discover what other produce purchases Legend Produce may have made throughout the year. Thus, the Court makes the reasonable inference that the amount of Legend Produce's purchases of perishable agricultural commodities in the relevant calendar year were in excess of $230,000. Accordingly, this exception does not apply.

C. Third Element: The Transactions Occurred in Interstate or Foreign Commerce

For PACA to apply a plaintiff must show that "the transaction occurred in interstate or foreign commerce." *Chang*, 385 F. Supp. 2d at 358. PACA defines interstate commerce as "commerce between any State or Territory, or the District of Columbia and any place outside thereof." 7 U.S.C. § 499a(b)(3).

Ryeco alleges that the commodities were sold and shipped in interstate and international commerce. (Compl. ¶ 8; Pl.'s Mem. at 5–6). The transactions listed in the invoices include produce that originated in countries such as Chile, Brazil, and South Africa. (Dkt. Nos. 12-2, 12-3). Ryeco additionally alleges that all the produce was shipped from its warehouse in Pennsylvania

---

[5] A plaintiff must show that the defendant is a dealer under 7 U.S.C. § 499a(b)(6) and does not fall under the exceptions provided. *Abraham Produce Corp. v. MBS Bros. Inc.*, No. 19-CV-2638 (NGG) (SLT), 2020 WL 1329362 at *4 (E.D.N.Y. Mar. 23, 2020).

[6] Ryeco also attached documents showing the demand letter sent to defendants regarding these claims under the PACA trust provisions. (*See* Dkt. No. 13-2).

[7] Legend Produce purchased more than $40,000 in fresh produce from Ryeco between August 4 and September 27, 2019, a period of less than two months. (Colace Decl. ¶ 6). To more than exceed the statutory requirement of $230,000 to fall within PACA liability as a dealer, Legend Produce would need to spend a similar amount approximately six times per year, or approximately every two months.

6

to Defendants in Brooklyn. (Colace Decl. ¶ 10; *see also* Dkt. No. 12-2). Thus, Ryeco satisfied the third element.

### D. Fourth Element: Ryeco Has Not Received Full Payment

A plaintiff further must show that "the seller has not received full payment on the transaction." *Chang*, 385 F. Supp. 2d at 358. A trustee violates PACA if it does not make full payment promptly. *Giumarra Agricom Int'l, LLC v. Fresh Growers Direct, Inc.*, No. 17-CV-2222 (CBA) (PK), 2018 WL 1136037, at *4 (E.D.N.Y. Jan. 30, 2018), *R & R adopted by* 2018 WL 1136085 (Feb. 28, 2018). The PACA regulations define "[f]ull payment promptly" as "[p]ayment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted." 7 C.F.R § 46.2(aa)(5).

Ryeco alleges that Legend Produce failed to promptly pay for the produce sold and shipped to Legend Produce between August 25, 2019 and September 27, 2019. (Compl. ¶¶ 17–21; Pl.'s Mem. at 6; Dkt. No. 13-2 at 3). Ten days have clearly gone by. Ryeco shows that Legend Produce did not pay for the produce by including the Demand Letter dated August 5, 2020 and by showing communication between the parties regarding the amount due. (Dkt. Nos. 13-2, -3). Additionally, the communications between the parties show that payments previously made were already applied to Legend Produce's account. (*See* Diess Decl. ¶ 6; Dkt. No. 13-3). Thus, Ryeco satisfied the fourth element.

### E. Fifth Element: Ryeco Preserved Its Trust Rights

A plaintiff must show that "the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law." *Chang*, 385 F. Supp. 2d at 358. A seller or a grower licensed under PACA can preserve their rights to the trust by including required statutory language on the face of their invoices. 7 U.S.C. § 499e(c)(4).

Ryeco alleges that it preserved its trust rights under PACA by including the required statutory language on the face of its invoices sent to Legend Produce. (Compl. ¶ 12; Pl.'s Mem. at 6). All the invoices provided by Ryeco include the required statutory language.[8] (*See* Dkt. No. 12-2). Thus, Ryeco satisfied the fifth element.

### III. Joint and Several Liability

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Gold Medal Produce, Inc. v. KNJ Trading Inc.*, No. 19 Civ. 3023 (AJN), 2020 WL 2747312, at *4 (S.D.N.Y. May 27, 2020) (citing *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007)). PACA amounts a duty on the trustee to make the PACA trust funds "freely available" for "prompt payment" to the seller. 7 C.F.R. § 46.46(d)(1), (e). Officers and directors of a corporation who are considered in a "position of control" over the PACA trust assets, can be held personally liable for the breach of the PACA trust even if they did not personally

---

[8] Ryeco's invoices state: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." (Dkt. No. 12-2); *see also* 7 U.S.C. § 499e(c)(4). They further include the names of the parties, the dates of the transactions and the requirement that payment be made no later than 10 days from the invoice's date. (Dkt. No. 12-2).

dissipate the assets. *Coosemans Specialties*, 485 F.3d at 706. "[T]o determine whether a PACA trustee's actions or omissions constitute a breach of fiduciary duty, courts examine whether the trustee 'in any way encumbered the funds or rendered them less freely available to PACA creditors.'" *Id.* (quoting *D.M. Rothman*, 411 F.3d at 99).

Ryeco brings claims against both Efraimov and Muratov, who Ryeco alleges were each "an officer, director, member and/or equity holder who operated Legend Produce during the relevant time or prior thereto . . . and was in a position of control over the PACA trust assets." (Compl. ¶¶ 5–6). The New York Secretary of State's record for Legend Produce does not list any registered agent for the company, (*see* Dkt. No. 13-1); however, the address listed for Legend Produce is the address for a single-family home at which Efaimov and Muratov reside. (Diess Decl. ¶ 3).

### A. Efraimov's Liability

Ryeco claims that Efraimov was in a position to control the PACA trust assets because she has not disputed that she was a principal of Legend Produce. (Pl.'s Mem. at 7). The most convincing piece of evidence supporting this claim is a cashier's check paid to Ryeco by Efraimov and credited to the Legend Produce account. (*See* Dkt. No. 13-4; Diess Decl. ¶¶ 6–7). Additionally, Muratov did not dispute that Efraimov was in a position of control over the PACA assets when he communicated with Ryeco's counsel. (Diess Decl. ¶ 7). Ryeco presented enough evidence to support its claim, and thus I respectfully recommend holding Efraimov jointly and severally liable with Legend Produce. *See S. Katzman Produce, Inc. v. Orel Produce, Inc.*, No. 18 Civ. 6947 (PAC), 2019 WL 4303423, at *4 (S.D.N.Y. Sept. 11, 2019) (collecting cases) (relying on defendant's payment of the corporation's debt, among other evidence, as sufficient to demonstrate a position of control over PACA trust assets); *cf. Higueral Produce*, 2019 WL 5694079, at *6 (holding individual defendants jointly and severally liable with corporate defendant based on conclusory allegations alone).

### B. Muratov's Liability

Similarly, Ryeco claims that Muratov was in a position to control the PACA trust assets because he has not disputed that he was a principal of Legend Produce. (Pl.'s Mem. at 7). Additionally, Ryeco presented an email thread between Ryeco's counsel and Muratov where the latter showed familiarity with Legend Produce's debt and books, including discussion of the cashier's check paid to Ryeco by Efraimov (Diess Decl ¶ 5; Dkt. No. 13-3). This communication shows Muratov's familiarity with the financial situation of Legend Produce.[9] Muratov also did not dispute the claim that he was a principal of Legend Produce. (Diess Decl ¶ 5). This evidence supports the conclusion that Muratov was in a position of control over the PACA trust assets. *See S. Katzman*, 2019 WL 4303423, at *4 (finding individual liability where individual defendant communicated in the name of the defendant company and made payment on its behalf); *see also Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F. Supp. 346, 349 (S.D.N.Y. 1993). Accordingly, I respectfully recommend holding Muratov jointly and severally liable.

---

[9] Additionally, the email address Muratov used to communicate with Ryeco's counsel is not his name but the name of Defendant Legend Produce, further supporting the conclusion that he is a principal of Legend Produce. (*See* Dkt. No. 13-3).

### IV. **Damages**

Although Defendants' default constitutes a concession of all well pleaded allegations, their default is not an admission of damages. *Greyhound*, 973 F.2d at 158. To establish the amount of damages the plaintiff should be awarded the Court may hold a hearing; however, a hearing is not mandatory, and the Court can award damages if "there [i]s a basis for the damages specified in the default judgement." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). The court may rely on affidavits and documentary evidence in satisfying that requirement. *Id.*

Ryeco seeks $38,534.90 in damages, plus pre-judgment interest, costs, and attorney's fees. (Pl.'s Mem. at 10–11). To support these claims, Ryeco submitted invoices, a billing statement, and charts calculating the principal amount owed, attorney's fees, and pre-judgement interest. (*See* Dkt. Nos. 11-3, 11-4, 12-2, 13-2).

#### A. Principal Sum

Under PACA, a dealer is liable for the full amount of damages sustained if they fail to maintain sufficient funds in the trust as required. 7 U.S.C. §§ 499b(4), 499e(a); *see also Higueral*, 2019 WL 5694079, at *9.

Ryeco claims that Legend Produce did not pay for produce purchased and received in the amount of $38,534.90.[10] (Compl. ¶ 10; Pl.'s Mem. at 10; Dkt. No. 13-2 at 4; Dkt. No. 11-3). Between August 25, 2019 and September 27, 2019, Legend Produce accumulated debt to Ryeco; however, the amount sought is greater than the totals listed in each subject invoice.[11] (*Compare* Dkt. No. 12-2, *with* 11-3 *and* 11-3 at 4). Nevertheless, the Court will rely on the invoices combined with the declaration of Ryeco's Vice President of Operations, signed in November 2020, in which Colace states that Legend Produce has failed to pay $38,534.90.

---

[10] On August 5, 2020, Ryeco's counsel, Louis W. Diess, III ("Diess"), sent a demand letter to Legend Produce including a statement of the amount due as of August 5, 2020. (Dkt. No. 13-2). The statement included credits to Legend Produce's account and invoice amounts between August 14, 2019 and September 29, 2019, as well as one payment Ryeco received on November 11, 2019 in the amount of $50.62. (*Id.* at 3).

Muratov contacted Diess to contest the amount owed. (Dkt. No. 13-3; Diess Decl. ¶ 5). In email communications on August 13–17, 2020, before the Complaint was filed, Muratov stated that some payment had been made to cover the amount owed to Ryeco. (Dkt. No. 13-3). When Diess requested evidence showing that payment was made, he referred to a "cancelled" cashier's check. (*Id.*). The Court is left only to speculate as to why Diess referred to that check as "cancelled." The check was paid to the order of Ryeco in the amount of $15,600 and included the memo "Legend Produce." (Dkt. No. 13-4 at 3). It appears to have been endorsed and deposited on August 29, 2019. (*Id.* at 3).

Diess states that Ryeco negotiated and applied the cashier's check to Legend Produce's account. (Diess Decl. ¶ 6). However, although August 29, 2019 is well within the date range represented in the statement attached to the demand letter, it does not appear that the $15,600 check, credited to Legend Produce's account, was incorporated into the calculations for the total amount sought. The Court cannot rely on Diess's statements alone in its assessment of damages.

[11] Ryeco does not provide the invoices for which it credited $42 and $320, respectively to Legend Produce's account. (*See* Dkt. No. 11-3 (invoices numbered 52806 and 52914)). The Court incorporates these amounts in the total calculations. In addition, the invoices Ryeco provides, each include the amount owed at the bottom after the words "PAY THIS AMOUNT." (*See* Dkt. No. 12-2). Those amounts, when combined, less the amounts credited to the Legend Produce account in the invoices not attached total $38,223.52.

9

(Colace Decl. ¶ 6); *see also Mikey's Choice LLC v. Fagos LLC*, No. 08-CV-4492 (RRM), 2010 WL 935550, at *3 (E.D.N.Y. Feb. 19, 2010), *R & R adopted by* 2010 WL 934260 (Mar. 12, 2010) (basing an award of damages on invoices together with sworn declaration of plaintiff's president). Accordingly, I respectfully recommend that this amount be awarded to Ryeco.

### B. Pre-judgment Interest

"While PACA 'does not itself establish a right to interest and collection costs,' courts have found that 'the purchaser is required to pay such items when the parties' contract so provides,' and thus, 'in such a case, the interest and collection costs become subject to the PACA trust together with the principal debt.'" *G & P Warehouse*, 2016 WL 5802747, at *7 (quoting *Dayoub Mktg., Inc. v. S.K. Produce Corp.,* No. 04 Civ. 3125, 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005)).

"The 'pivotal question' in determining whether a plaintiff can recover prejudgment interest is 'whether the parties' contract provides for an award of interest and collection costs in favor of plaintiff.'" *Higueral Produce*, 2019 WL 5694079, at *9 (quoting *G & P Warehouse*, 2016 WL 5802747, at *7). Hence, Ryeco will be entitled to contractual pre-judgement interest, if indicated in its invoice's terms. *See Giumarra Agricom*, 2018 WL 1136037, at *8.

Ryeco seeks a total of $4,148.20 in pre-judgement interest accrued through November 19, 2020 based on a nine percent per annum rate. (Pl.'s Mem. at 10). Ryeco's invoices read only that: "[i]n the event of the enforcement of our trust claim, we will seek to recover reasonable attorney's fees and the costs of recovery," (Dkt. No. 12-2); thus, Ryeco did not include language pertaining to interest in its invoices sent to Legend Produce. Ryeco did not give Legend Produce notice of a pre-judgment interest term or allow Legend Produce the opportunity to object to a contractual obligation. *Cf. G & P Warehouse*, 2016 WL 5802747, at *7 ("There is no evidence that [defendant] ever objected to this provision."). Thus, interest cannot be awarded based on the invoice's language.

However, Ryeco argues that the PACA invoice is a contract, and therefore, Ryeco should be awarded interest at the rate of nine percent per annum pursuant to New York CPLR §5001 and §5004 for Ryeco's failure to make the agreed upon payments. (Pl.'s Mem. at 10). Courts in this Circuit have broad discretion to award pre-judgment interest. *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995). Where PACA agreements are silent as to interest, courts have awarded pre-judgement interest based on the delay in payment. *See Mikey's Choice*, 2010 WL 935550, at *3 (collecting cases) (finding that plaintiff is entitled to pre-judgement interest using the IRS underpayment rate). I find this reasoning persuasive. Because PACA invoices are contracts, *see, e.g.*, *Coosemans*, 485 F.3d at 709, and Legend Produce did not pay the amounts due under those contracts, I respectfully recommend pre-judgement interest be awarded from August 5, 2020 through today's date in the amount of $2,783.50, plus interest at the rate of $9.50 per day until the date that the clerk of court enters judgment.[12]

---

[12] Ryeco provided notice to legend Produce of its PACA violation by letter dated August 5, 2020, including Ryeco's intent to seek the principle amount, pre-judgment interest, and other relief. (Dkt. No. 13-2). Accordingly, I respectfully recommend that prejudgment interest be calculated from that date. (.09 / 365) ✕ $38,534.90 = $9.50 per day ✕ 293 days).

10

C. Attorney's Fees

Ryeco is entitled to attorney's fees as provided in the language of its invoices. (*See* Dkt. No. 12-2 ("In the event of the enforcement of our trust claims, we will seek to recover reasonable attorney's fees and the costs of recovery.")); *see also Giumarra Agricom*, 2018 WL 1136037, at *6; *Higueral Produce*, 2019 WL 5694079, at *11 ("[S]tandard form provisions contained in invoices are considered terms of a contract between two parties under PACA."). That said, plaintiff bears the burden of proving the reasonableness of those fees sought. *Higueral Produce*, 2019 WL 5694079, at *11. Thus, the court reviews the fees requested for reasonableness.

When reviewing the reasonableness of legal fees, the Court calculates the "presumptively reasonable fee" for a counsel's work by surveying what reasonable clients are willing to pay, taking into consideration a client's need to minimize cost. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008)). The Court has broad discretion when reviewing the reasonableness of requested attorney's fees. *See Cent. Produce Corp.*, 2018 WL 4327923, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The Court reviews the reasonableness of the requested fees using a two-step analysis. *See id.* at *9 (citing *Arbor Hill*, 522 F.3d at 190). First, the Court examines if the hourly rate requested is reasonable. *Higueral Produce*, 2019 WL 5694079, at *11. Second, the Court reviews if the hours expended were warranted and reasonable. *Id.*

Ryeco submitted statements and contemporaneous billing records supporting its request for a total of $9,359.75 in attorney's fees. (*See* Dkt. No. 11-4). This request is based on a total of 22.9 hours of work by three attorneys, Diess, Gregory Brown ("Brown"), and Kate Ellis ("Ellis"), and one paralegal Blanca Ramos ("Ramos"). (Dkt. No. 11 ("Brown Decl.") ¶¶ 13–17; Dkt. No. 11-4).

*1. Reasonable hourly rate*

In determining a reasonable hourly rate, "the Court first examines the experience and qualifications of counsel seeking the fee award." *Higueral Produce*, 2019 WL 5694079, at *11. Courts in the Eastern District regularly approve rates between $300–$450 for partners, $200–$300 for senior associates, and $100–$200 for junior associates. *Id.* at *12 (collecting cases). Additionally, the Court has held that an increase of attorney's fees rates may be warranted with the passage of time. *Sajvin v. Singh Farm Corp.,* No. 17-CV-04032 (AMD)(RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018), *R & R adopted by* 2018 WL 4211300 (Sept. 4, 2018).

Three attorneys logged hours for this case: Brown, Diess, and Ellis. Diess is a named partner at his firm and has twenty-nine years of experience working on PACA cases, since he started practicing in 1992. (Brown Decl. ¶ 15). Ryeco requests an hourly rate of $425 for Diess, a rate within the range typically approved by courts in this District. (Brown

---

In the alternative, I respectfully recommend awarding interest under 28 U.S.C. § 1961(a), the rate used by the U.S.D.A. in issuing reparation orders, using the same date to calculate the interest rate as utilized by the U.S.D.A., 20 days after acceptance of the first shipment. *Felix Produce Corp. v. New Lots Food Corp.*, No. 08-CV-5161 (JS) (ARL), 2009 WL 2985444, at *2 (E.D.N.Y. Sept. 14, 2009) ("The interest rates under 28 U.S.C. § 1961(a) are typically well below the statutory rate of 9% under N.Y. C.P.L.R. §§ 5001, 5004.").

11

Decl. ¶ 15). Because Diess is a named partner with significant specialized experience, this Court finds the requested rate of $425 appropriate. *Cf. Higueral Produce*, 2019 WL 5694079, at *12 (awarding $400 per hour for Diess's work).

Brown has fifteen years of experience working in the PACA field and has been practicing since 2006. (Brown Decl. ¶ 14). For this case, he billed his hours at a rate of $400 per hour. (Dkt. No. 11-4). Although well-above the typical range awarded to senior associates, two years ago, Brown was awarded an hourly fee of $375. *See Higueral Produce*, 2019 WL 5694079, at *12. With the passage of time, the Court finds that a small adjustment is warranted. The Court deems an hourly fee of $385 to be reasonable.

Brown's declaration does not specify if Ellis is a partner or an associate. (Brown Decl. ¶¶ 14–16). Ellis has seventeen years of experience working on PACA legal issues, concentrating in the field since 2004. (*Id.* ¶ 16). Ellis's rate for this case was $400 per hour. (*Id.*). The Court notes that in 2011, Ellis was awarded $305 per hour in this District. *See Food Auth., Inc. v. Sweet & Savory Fine Foods, Inc.*, No. 10-CV-1738 (JS) (WDW), 2011 WL 477714, at *5 (E.D.N.Y. Feb. 4, 2011) (awarding Ellis $305 as a senior associate). Given the limited information provided by Ryeco, Ellis's experience, the time that has passed since the 2011 decision, and the reasonable hourly rate for Brown, the Court finds $385 per hour a reasonable hourly fee for Ellis.

Lastly, Ramos, the paralegal, billed an hourly rate of $265 and has worked as a paralegal since 2008. (Brown Decl. ¶ 17). Her hourly fee is unreasonable. This District has set the reasonable hourly fee of a paralegal at $70–$100. *See, e.g.*, *Mor USA*, 2021 WL 799327, at *7. Given that the requested fee is more than twice the maximum awarded an adjustment of this hourly fee is required. It is reasonable to award $100 per hour for Ramos's work on this case.

2. *Reasonable hours expended*

Second, the Court turns to the reasonableness of the time expended. Ryeco's attorneys and paralegal worked a total of 22.9 hours on this case, including 5.6 hours worked by Diess, 4 by Ellis, 7.2 by Brown, and 6.1 by Ramos. (*See* Dkt. No. 11-4). After reviewing the hours expended, and because the amount falls within the normal number of hours expended in similar cases, the Court finds the hours to be reasonable. *See Giumarra Agricom*, 2018 WL 1136037, at *7–8 (finding 22.2 hours of attorney's work and 14.4 hours of paralegal work reasonable); *Higueral Produce*, 2019 WL 5694079, at *13 (finding 16.3 hours reasonable). For the reasons stated above the Court respectfully recommends an award of $7,302 in attorney's fees.[13]

D. Costs

PACA alone does not establish entitlement to costs; however, as with attorney's fees, it allows for the award of costs based on the parties' contractual agreements. *G & P Warehouse*, 2016 WL 5802747, at *12. Thus, Ryeco is entitled to recover reasonable costs of this action. (*See* Dkt. No. 12-2).

Ryeco seeks $883.25 in costs, consisting of $376.75 for service of process, $400 for the filing fee, $28.64 in postage, and $77.2 in online research costs. (Dkt. No. 11-4).

---

[13] 5.6($425) + 7.2($385) + 4($385) + 6.1($100) = $7,302

12

Although these costs are listed in the invoice provided by Ryeco's counsel this alone is insufficient. *See, e.g.*, *Piedra v. Ecua Rest., Inc.*, 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018), *R & R adopted in relevant part by* 2018 WL 1135652 (Feb. 28, 2018) ("[T]he Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs."). Ryeco did not provide receipts or other documentary evidence to support the award of these costs; however, the Court may take judicial notice of the District's $400 filing fee. *Id.* (citing *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 (KAM) (SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013); *see also* Dkt. No. 1 Entry dated 08/31/2020 noting "filing fee $400, receipt number ANYEDC-13289108"). Accordingly, I respectfully recommend awarding costs in the amount of $400.

## **CONCLUSION**

Following the analysis above, it is respectfully recommended that the Motion for Default Judgment be granted, that Efraimov and Muratov be held jointly and severally liable with Legend Produce, and that Ryeco be awarded damages in the total sum of $49,020.40, comprised of:

(i) $38,534.90 in damages;
(ii) $7,302 in attorneys' fees;
(iii) $400 in costs; and
(iv) $2,783.50 in pre-judgment interest through today's date, plus
(v) pre-judgment interest from today's date through the date that the Clerk of Court enters judgment at a rate of $9.50 per day.

Ryeco is hereby directed to serve a copy of this Report and Recommendation on Legend Produce, Muratov, and Efraimov and file proof of service on the docket promptly thereafter. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Defendant's failure to file any such objection in a timely manner waives Defendant's rights to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

RESPECTFULLY RECOMMENDED.

**/s/ Ramon E. Reyes, Jr.**

Hon. Ramon E. Reyes, Jr.
United States Magistrate Judge
Dated: May 24, 2021

13